[No. J.D. 5. En Banc. December 13, 1990.]

*In the Matter of the Disciplinary Proceeding Against* ARTHUR A. BLAUVELT III, *as Judge of the Elma Municipal Court.*

*Carney, Stephenson, Badley, Smith & Spellman, P.S.,* by *James E. Lobsenz,* for the Judge.

*Riddell, Williams, Bullitt & Walkinshaw,* by *David D. Hoff, Howard A. Coleman,* and *Judith L. Andrews,* for Commission on Judicial Conduct.

*Paul J. Lawrence* on behalf of the American Civil Liberties Union, amicus curiae.

DURHAM, J.—Judge Arthur A. Blauvelt III challenges the Washington Commission on Judicial Conduct's (Commission) ruling that he violated Canon 7 of the Code of Judicial Conduct, and the Commission's recommendation that he be admonished. Canon 7 limits political activity by judges.

We affirm the Commission's conclusion that Judge Blauvelt violated Canon 7 in certain regards. However, we also conclude that the imposition of sanctions against Judge Blauvelt is inappropriate. Thus, many of the legal issues Judge Blauvelt raises need not be addressed.

Judge Blauvelt is a municipal court judge in Elma, Washington. He was appointed to this nonelective position in January 1987. Judge Blauvelt hears cases each Wednesday from 6 to 8:30 p.m. involving traffic infractions, civil assaults, criminal driving violations and licensing violations. In addition to his judicial duties, Judge Blauvelt continues to practice law in Aberdeen, Washington, where he is a partner in his law firm.

On August 31, 1988, the Commission filed a formal complaint alleging that Judge Blauvelt violated CJC Canon 7(A)(1), (2) and (4). After a fact–finding hearing held on January 6, 1989, the Commission concluded that Judge Blauvelt had violated CJC Canon 7(A)(1) and (4) and recommended that he be admonished.[1] The Commission also concluded that it had no constitutional or statutory authority to determine the constitutionality of specific canons.

The relevant portions of Canon 7 read as follows:[2]

(A) Political Conduct in General.

 (1) Judges or candidates for election to judicial office should not:

 (a) act as leaders or hold any office in a political organization;

 (b) make speeches for a political organization or candidate or publicly endorse a nonjudicial candidate for public office;

 (c) solicit funds for or pay an assessment or make a contribution to a political organization or nonjudicial candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions, except as authorized by Canon 7(A)(2);

 . . . .

 (4) Judges should not engage in any other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice.

---

[1] In its statement of facts, the Commission states that Judge Blauvelt had violated each of the provisions noted in the complaint. However, the Commission did not conclude that CJC Canon 7(A)(2) had been violated.

[2] The language of the Canon as it now reads differs slightly from the language as quoted in the Commission's decision because of changes made in March 1988 to make the CJC gender neutral. 110 Wn.2d 1101, 1116–17 (1988).

The following findings of fact supporting the Commission's conclusions are undisputed:

4. On March 8, 1988, [Judge Blauvelt] attended a local caucus for the Democratic party. At the caucus he was selected as a delegate for Jesse Jackson to the Grays Harbor County Democratic convention.

5. [Judge Blauvelt] attended the Grays Harbor County Democratic convention on April 23, 1988, and was selected as a delegate for Jesse Jackson to the Washington State Democratic convention. [He] refrained from attending either the Second Congressional District or the State convention after receiving notice from the Commission regarding its position.[3] [He] refrained from doing so in order to permit a resolution of the legal issues in an orderly manner before the Commission.

At both the local caucus and county convention, Judge Blauvelt signed a registration sign–in sheet, as required by the rules of the Democratic Party. At the caucus, the sign–in sheet contained a pledge, which stated in part: "I consider myself a Democrat and I agree that my attendance at this caucus is a matter of public record." Judge Blauvelt wrote Jesse Jackson's name under "Presidential Preference". At the county convention, the sign–in sheet contained the following statement:

I certify that I am a Democrat, that I am a resident, registered voter in said precinct and that I support the principles of the Democratic Party and those candidates who support those principles.

Although the Commission concluded that Judge Blauvelt had violated Canon 7, it also found that he "believed in good faith that he was exercising his constitutional rights as a citizen of the United States in attending the local caucus and the County convention."[4]

Judge Blauvelt filed an objection to the Commission's conclusion that it does not have the authority to determine

---

[3]Apparently a citizen brought Judge Blauvelt's attendance at the county convention to the attention of the Commission, which then initiated this action.

[4]Prior to Washington's adoption of a presidential primary system in 1989, RCW 29.19, attendance at a caucus was the only way to participate in selecting a presidential nominee. Acting as a delegate to the convention served to ensure continuing support for one's nominee.

the constitutionality of specific canons. He also objected to the Commission's conclusion that he had violated CJC Canon 7(A)(1)(a). Both objections were denied and a final decision was entered. Judge Blauvelt filed a notice of contest and the case was certified to this court.[5]

Judge Blauvelt appeals the Commission's conclusion that he acted as a "leader" in a political organization and he argues that the term "leader" is unconstitutionally vague. He asks this court to construe CJC Canon 7(A)(1) as applying to elected judges only, and he urges this court to reverse the Commission's recommendation of admonishment. He also raises a number of federal and state constitutional issues. He does not contend that Canon 7 is unconstitutional on its face, but rather, that it is unconstitutional as applied to the facts of his case. The interpretation and construction of Canon 7 will be addressed first.

### INTERPRETATION AND CONSTRUCTION OF CANON 7

Judge Blauvelt assigns error to the Commission's conclusion that he acted as a leader in a political party. Alternatively, he urges this court to hold that the term "leader", as used in Canon 7, is unconstitutionally vague. We reject both arguments.

CJC Canon 7(A)(1)(a) prohibits judges from "act[ing] as leaders or hold[ing] any office in a political organization". The term "leader" is not defined within the CJC. Judge Blauvelt argues that he was not a leader when he acted as a delegate to the county convention because he did not "lead, direct, control, manage, supervise, or advise" anyone and he remained free to vote for the person of his choice. The Commission agrees that Judge Blauvelt remained free to vote for the person of his choice, but argues that he was a

---

[5]Under the Washington Constitution, this court is required to conduct a hearing to review the Commission's proceedings and findings. Const. art. 4, § 31 (amend. 71). Thus, review of both the law and the facts is de novo. *In re Kaiser*, 111 Wn.2d 275, 759 P.2d 392 (1988). However, "'considerable weight'" is given to the findings and recommendations of the Commission. *Kaiser*, at 279 (quoting *In re Buchanan*, 100 Wn.2d 396, 400, 669 P.2d 1248 (1983)).

leader because he acted as a representative at the convention and because delegates to the county convention determine the party's position on critical issues.[6]

When interpreting rules adopted by this court, the rules are approached as if drafted by the Legislature, and words are given their ordinary meaning. *State v. McIntyre,* 92 Wn.2d 620, 622, 600 P.2d 1009 (1979). *Webster's Third New International Dictionary* 1283 (1986) defines leader in a number of ways, including "a person who by force of example, talents, or qualities of leadership plays a directing role, wields commanding influence, or has a following in any sphere of activity or thought". A leader may also be "a member often chosen by caucus of his party to exercise general direction of or management of a particular phase of party activities in a legislative body" or "one that exercises paramount but to some degree responsible authority over a state or local party organization".

Here, the very fact that Judge Blauvelt was free to change his vote reflects the power that he was given as a delegate. Party members gave Judge Blauvelt their proxy to vote as he saw fit in his best judgment. While he did not have power over the party, he did control that proxy and wield influence at the party convention. It is clear that Judge Blauvelt was acting as a leader when he served as a delegate to the county convention. We next address Judge Blauvelt's contention that the term "leader" is unconstitutionally vague.

Canon 7 is presumed constitutional and Judge Blauvelt has the burden of proving it unconstitutionally vague beyond a reasonable doubt. *American Dog Owners Ass'n v. Yakima,* 113 Wn.2d 213, 215, 777 P.2d 1046 (1989). To withstand a vagueness challenge, the canon must give adequate notice of prohibited activities. "Adequate notice requires the law to be sufficiently definite so that a person

---

[6]The Commission does not contend that Judge Blauvelt acted as an officer of the Democratic Party.

of ordinary intelligence can reasonably tell what is prohibited." *American Dog Owners Ass'n,* at 215.

Judge Blauvelt argues that the term "leader" is vague because it is not clear at what level participation becomes leadership. This argument is not persuasive. CJC Canon 7(A)(1)(c) prohibits attendance at political gatherings. It would be reasonable for a person of ordinary intelligence to conclude that taking on the additional, active role by standing for election as delegate is prohibited. Thus, the term "leader" as used in Canon 7 is not unconstitutionally vague.

Judge Blauvelt also urges this court to construe CJC Canon 7(A)(1) as only applying to elected, rather than appointed, judges. By its language, CJC Canon 7(A)(1) applies to "[j]udges or candidates for election to judicial office". Judge Blauvelt asserts that "election to judicial office" modifies both "judges" and "candidates". Therefore, he argues, section (A)(1) does not apply to judges who are appointed.

Judge Blauvelt's only arguments for his construction of section (A)(1) are that it is clearly implied and makes sense. He argues that such a construction makes sense because an appointed judge will not engage in prohibited political activities to induce the party to "return the favor". Also, an appointed judge will never benefit from public endorsement or have a campaign to fund. This argument totally ignores the impact of political activity by judges on the appearance of impartiality.

The Commission relies on the history of the Code to argue that section (A)(1) applies to all judges. The drafters of the American Bar Association Code of Judicial Conduct "decided that the provisions of Canon 7 should apply to all judges and to all candidates for judicial office." E. Thode, *Reporter's Notes to Code of Judicial Conduct* 95 (1973). The drafting committee decided to include candidates for election in this section so that candidates for judicial office would be subject to the same standard as incumbent

judges. E. Thode, at 96. Thus, the Commission argues, the words "for election" modify "candidates", but not "judges".

 The Commission's construction is supported by our case law. This court has said that "'[w]hen the term "or" is used [in a statute] it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly contrary.'" *Childers v. Childers,* 89 Wn.2d 592, 595, 575 P.2d 201 (1978) (quoting 1A C. Sands, *Statutory Construction* § 21.14 n.1 (4th ed. 1972)). Further, "'or' does not mean 'and'". *Childers,* at 596 (quoting *State v. Tiffany,* 44 Wash. 602, 87 P. 932 (1906)). While *Childers* was interpreting a statute, this court will interpret rules it has adopted by "approach[ing] them as though they had been drafted by the legislature". *McIntyre,* at 622 (quoting *State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 797, 585 P.2d 1177 (1978)). The use of the word "or" indicates that the words "for election" should be construed only to modify "candidates". There is nothing in Canon 7 indicating a contrary intent. Therefore, we hold that CJC Canon 7(A)(1) applies to all judges, appointed and elected.

Having addressed the interpretation and constitutionality of the term "leader" and the construction of Canon 7(A)(1), we turn now to the question of sanctions.

## SANCTIONS

The Commission recommended a sanction of admonishment, which is the least severe sanction possible. Judge Blauvelt argues that this court should refrain from imposing any sanction for two reasons. First, the Commission found that he "believed in good faith that he was exercising his constitutional rights as a citizen of the United States in attending the local caucus and the County convention." And, second, there would be no valid purpose in imposing a sanction in this case. We agree and decline to adopt the Commission's recommendation.

 This court's authority to impose sanctions is found in Const. art. 4, § 31 (amend. 77), which states in part that "[t]he supreme court may censure, suspend, or

remove a judge or justice for violating a rule of judicial conduct". Under rule 9(c) of the Discipline Rules for Judges this court "may impose the sanction recommended by the commission, or any other sanction [it] deems proper." The comment to DRJ 9(c) states that "[t]he court may impose the discipline it determines is proper." Thus, the language of the constitution, the rule, and the comment is permissive, rather than mandatory. This court "may" impose the sanction it deems proper. Neither the constitution nor the rules require the imposition of a sanction if this court determines that such sanction is not warranted. This court's primary concern in imposing sanctions is to "provide sanctions sufficient to restore and maintain the dignity and honor of the position and to protect the public from any future excesses. . . . [T]hese sanctions must be sufficient to prevent reoccurrences." *In re Buchanan,* 100 Wn.2d 396, 400, 669 P.2d 1248 (1983).

Under the DRJ, discipline may be admonishment, reprimand, censure, suspension, or removal from office. While "'considerable weight'" is given to the recommendation of the Commission, *In re Kaiser,* 111 Wn.2d 275, 279, 759 P.2d 392 (1988) (quoting *In re Buchanan, supra* at 400), review of the Commission's recommendation is de novo. This court has "[t]he duty, authority, burden and responsibility of determining and making the actual judgment, together with the imposition of whatever penalty may be appropriate or necessary". *In re Deming,* 108 Wn.2d 82, 87, 736 P.2d 639 (1987) (quoting *In re Cieminski,* 270 N.W.2d 321, 326 (N.D. 1978)).

In determining the proper sanction, if any, to impose, this court considers the following nonexclusive factors:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his

private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

*In re Kaiser, supra* at 289–90 (quoting *In re Deming, supra* at 119–20).

Applying these considerations to the present case, no sanction appears necessary. First, all of the challenged activities took place within the framework of a single election. While the conduct involved partisan political activity, it was limited to attendance at a Democratic precinct caucus and county convention and was solely for the purpose of participating in the selection of a presidential nominee. Second, as soon as Judge Blauvelt received notice of the charges, he refrained from attending the district and state conventions. Third, under Washington's new presidential primary election law, Judge Blauvelt will be able to cast his vote for a presidential nominee by secret ballot. There is no reason to believe that Judge Blauvelt will attend partisan conventions in the future. Fourth, there have been no prior complaints against him. Finally, while Judge Blauvelt's actions did impact the judiciary by bringing into question the appearance of fairness, there is no indication that this activity influenced his behavior on the bench in any way or that Judge Blauvelt was exploiting his position to satisfy his personal desires. Indeed, the Commission found that he acted with a good faith belief that he was exercising his constitutional rights at all times.

Thus, we conclude that a sanction is not necessary in this case to prevent a recurrence or maintain the dignity of the judiciary, and we reject the Commission's recommended imposition of an admonishment.

STATE AND FEDERAL CONSTITUTIONAL ISSUES

Judge Blauvelt also raised a number of state and federal constitutional issues, which need not now be

decided. His challenges are limited to the Canon's prohibition against attending political gatherings, which served, in this instance, to bar him from attending the caucus and county convention for the purpose of stating his preference for presidential nominee. As the court has declared on numerous occasions, "'[a] reviewing court should not pass on constitutional matters unless absolutely necessary to its determination of the case.'" *State v. Maxwell*, 114 Wn.2d 761, 771, 791 P.2d 223 (1990) (quoting *State v. Ng*, 110 Wn.2d 32, 36–37, 750 P.2d 632 (1988)); *State v. Claborn*, 95 Wn.2d 629, 632, 628 P.2d 467 (1981); *Ohnstad v. Tacoma*, 64 Wn.2d 904, 907, 395 P.2d 97 (1964). Because this court has declined to impose a sanction on Judge Blauvelt, there is no reason to address his constitutional issues as they pertain to his actions. Indeed, he himself has suggested that these issues need not be reached if the admonishment is lifted. Moreover, this State's adoption of a presidential primary system has rendered these issues moot. Moot questions or abstract propositions will not be addressed on appeal. *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

In sum, we affirm the Commission's conclusion that Judge Blauvelt acted as a leader within the meaning of CJC Canon 7(A)(1)(a) and hold that the term "leader" as used in that section is not unconstitutionally vague. Further, Canon 7(A)(1) applies to all judges, appointed and elected. Finally, because a sanction in this case is unwarranted, the Commission's recommended admonishment is rejected.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, SMITH, and GUY, JJ., concur.

Reconsideration denied February 13, 1991.