[No. J.D. 7.   En Banc.   April 9, 1992.]

*In the Matter of the Disciplinary Proceeding Against*
FRED J. STOKER, *Judge of the District Court*
*for Clark County.*

*Fred J. Stoker*, pro se.

*Riddell, Williams, Bullitt & Walkinshaw*, by *David D. Hoff* and *Scott Schrum*, for Commission on Judicial Conduct.

SMITH, J. — The Honorable Fred J. Stoker, Judge of the Clark County District Court, appeals a decision by the Commission on Judicial Conduct (Commission) that he had violated Canon 7 of the Code of Judicial Conduct, and its imposition of the sanction of admonishment upon him. We overrule the Commission and dismiss the case.

On January 15, 1991, a statement of charges was filed with the Commission alleging violations by Appellant Stoker. The record does not indicate who initiated the complaint. The statement asserted that "[a]t the Clark County fair, from August 3-12, 1990, [Appellant Stoker] rented space at a Democratic Committee booth and personally appeared at the booth to campaign for re-election" and that during the same period he "displayed campaign materials in both the Democratic party and Republican party booths." The statement concluded that the "Commission has determined that probable cause exists for believing [Appellant Stoker] has violated Canons 1, 7(A)(2) and 7(B)(1)(d) of the Code of Judicial Conduct. . . ."

Following the Statement of Charges, Appellant Stoker on February 6, 1991, filed an answer asserting that "it is tradition, custom, and common practice for nonpartisan candidates for election to make use of the Democratic and Republican booths at the Clark County Fair for campaign purposes."[1]

---

[1] Answer; Commission Papers ("Y").

On February 7, 1991, the executive director of the Commission filed a notice of fact-finding hearing, scheduling it for February 25, 1991, at 9:30 a.m.

On February 8, 1991, Appellant Stoker filed a motion for discovery, requesting the following:

1. Names and addresses of all witnesses whose testimony that party expects to offer at the hearing.

2. A brief summary of the expected testimony of each witness.

3. Copies of signed/unsigned or recorded statements of anticipated witnesses, and

4. Copies of documents which may be offered.

5. Any material or information within the knowledge of the commission, its agents/investigators and its counsel, which tends to negate the complaints.[2]

On February 16, 1991, the Commission filed its response to respondent's first request for discovery, providing the names, addresses and summary of proposed testimony of witnesses it planned to call.

On February 21, 1991, the Commission filed a revised notice of fact-finding hearing in response to a February 15, 1991, letter from Steven W. Thayer, counsel for appellant, requesting a continuance of the hearing date and waiving the 42-day requirement.

On April 3, 1991, counsel for the Commission filed their brief before the Commission, stating that in August 1990 Appellant Stoker:

1. placed or caused to be placed one of his campaign signs in both the Democratic and Republican Party booths at the Clark County Fair;

2. placed or caused to be placed campaign literature in each booth during the fair;

3. on at least one occasion, campaigned to fairgoers from both within the Democratic and Republican Party booths; and

4. could be seen inside both booths at various times during the fair.[3]

---

[2]Commission Papers ("W").

[3]Brief of Commission on Judicial Conduct (before the Commission), at 1-2; Commission Papers ("S").

Afterward, on April 8, 1991, Appellant Stoker filed "Respondent Judge's Hearing Memorandum". Previously, on April 3, 1991, appellant filed "Respondent's Discovery to Commission" which included the names, addresses and summaries of the proposed testimony of witnesses. In his memorandum, appellant asserted that campaign materials were neither false nor deceptive; that he did not identify himself as a member of a political party; that his campaign literature and personal appearance at the Democratic and Republican booths are protected by the first amendment to the United States Constitution and by article 1, section 5 of the Washington Constitution; that issuance of a check for $65 by his campaign committee to the Clark County Democratic Committee did not violate CJC 7(A)(2); and that the Commission should not impose any sanction, even in the event of a finding of misconduct.

On April 8, 1991, counsel for the Commission filed a "Reply Brief of Commission on Judicial Conduct". That document stated that Judge Stoker implicitly misled Clark County fairgoers into believing that he was endorsed by the Democratic and Republican Parties; that he implicitly identified himself as a member of both political parties; that he contributed money to a political organization; and that his conduct warranted discipline.[4]

On April 9, 1991, a stipulation indicating the following undisputed facts was filed:

1. In August, 1990, during his reelection campaign, Judge Stoker placed or caused to be placed one of his campaign signs in both the Democratic and Republican Party booths at the Clark County Fair.
2. In August, 1990, during his reelection campaign, Judge Stoker placed or caused to be placed campaign literature in each booth during the fair.
3. In August, 1990, during his reelection campaign, Judge Stoker campaigned to fairgoers from within each booth on at least one occasion.
4. In August, 1990, during his reelection campaign, Judge Stoker could be seen inside both booths at various times during the fair.

---

[4]Reply Brief of Commission on Judicial Conduct (before the Commission); Commission Papers ("P").

5. In August, 1990, during his reelection campaign, Judge Stoker's signs and literature were clearly visible in both booths and Judge Stoker was at times in the booths, surrounded by partisan symbols, banners and signs.

6. Exhibit A, attached hereto, is a true and correct copy of the Public Disclosure Commission Summary of Expenditures, Form C4, signed and dated September 6, 1990 and the facts contained therein are truthful and accurate.[5]

On April 9, 1991, Appellant Stoker filed "Respondent Judge's Reply Brief", concluding that the cases cited by the Commission are distinguishable from his. He denied that his campaign literature implied that he was endorsed by either the Democratic or the Republican Party. Additionally, he noted that the Commission did not present any evidence from Clark County voters that they were misled into believing he had been endorsed by either the Democratic Party or the Republican Party.[6]

The matter was heard by a fact-finding subcommittee consisting of Steven A. Reisler (presiding officer), Douglas E. Sayan and the Honorable Donald H. Thompson. The subcommittee met on April 9, 1991, and filed its report and recommendation on May 7, 1991. The report reached the following conclusions:

1. By campaigning from within a political party's booth, posting his signs in the Democratic and Republican party booths and by placing his campaign literature within these booths, Judge Stoker violated CJC Canons 7(A)(2) and 7(B)(1)(d).

2. CJC 7(A)(2) prohibits a judge from identifying himself as a member of a political party. By engaging in the acts described above, Judge Stoker gave the impression either that he was running as a Democrat, and enjoyed the support of the Democratic Party, or that he was running as a Republican with Republican Party support. At best, Judge Stoker gave the impression that he was running a *bipartisan*, not a non-partisan campaign for judicial office. Judge Stoker could not physically be present in both booths at the same time. A given

---

[5]Stipulation of Facts; Commission Papers ("O"). Appellant's public disclosure form C4 listed a payment of $65 on August 6, 1990, to the "Clark County Democratic Comm." for "fair booth space rental".

[6]Reply Brief of Respondent Judge (before the Commission); Commission Papers ("M").

fairgoer, passing by the booth he was occupying at the time, would be given the distinct impression that he was supported or endorsed by that political party. Therefore, he was identifying himself as a *member of a particular political party* to numerous Clark County voters, which would vary depending on the particular booth he was occupying at the time.

3. By campaigning from both the Republican and Democratic booths at the Clark County Fair, and by placing his campaign literature within these booths, Judge Stoker implicitly misled fairgoers into believing that he was endorsed by both political parties for re-election to the bench. This was a violation of CJC 7(B)(1)(d) which prohibits false or misleading judicial campaign advertising.

4. By contributing $65 to the Democratic Party for the use of the Democratic booth at the Clark County Fair, Judge Stoker violated CJC 7(A)(2) which prohibits a judge from contributing to a political party or organization. Although Respondent maintains that the payment was merely "rent" for his use of the Democratic booth, the $65 contributed to the Democratic Party was used by it to help defray the cost of the booth in its partisan political interests.

5. It cannot be assumed that all voters are sufficiently sophisticated to know that a judgeship in Washington is a non-partisan political office. The citizenry know that judges are non-partisan by the judges' words and conduct in and out of the courtroom, before, during and after their campaigns for election. A judicial campaign which can leave some citizens with the impression that a particular judge is a political *partisan* will erode the general appearance of the judicial *non*-partisanship.

6. The actions of Respondent described above may or may not have been consistent with custom and prior judicial elections in Clark County. In any event, the Canons [*sic*] of Judicial Conduct, and the appearance of impartiality underlying them, take precedence over campaign customs or past practices. If all judicial candidates abide by the Canons [*sic*] of Judicial Conduct, no one candidate will have an advantage over any other candidate for judicial office.

7. The actions of Respondent described above are not permissible under Canon 7(A)(2) which provides: "Judges . . . or candidates . . . may attend political gatherings *and* speak to such gatherings on the judges' own behalf . . ." No opportunity was given for speeches to be made from within either of the booths. Furthermore, this activity at the Clark County Fair was not a "political gathering". Unlike political picnics and gatherings, the majority of people who attend the Clark County Fair pay an entrance fee to see the animals, ride the rides, see the displays and enjoy the entertainment. For the majority of Clark County fairgoers, the county fair is not a

political gathering, but entertainment, rest and relaxation. Proper campaigning for judicial office may be acceptable at the fair; but the fair cannot accurately be described as a "political gathering" such as to sanction respondent's conduct under Canon 7(A)(2).

Commission Papers ("I").

The subcommittee recommended that the Commission enter findings that Judge Stoker violated Canon 7 of the "Canons" of Judicial Conduct and that the Commission admonish Judge Stoker for his actions. The subcommittee further recommended that the Commission issue a written advisory cautioning appellant and any other judge not to engage in the proscribed behavior which was the subject of the public hearing.[7]

In response to a letter from Appellant Stoker, the Commission on May 17, 1991, issued an order extending time for filing objections to the report and recommendation of the subcommittee. On May 30, 1991, appellant filed "Respondent's Objections to Proposed Findings of Fact and Conclusions of Law" with the Commission.

After a meeting by telephone conference call on June 25, 1991, the Commission determined that Appellant Stoker did violate Canon 7, and issued an admonishment to him.

On June 27, 1991, appellant submitted a "Notice of Contest-DRJ 3 or in the Alternative, Notice of Appeal" to this court. On that date we set the matter for hearing pursuant to Discipline Rules for Judges (DRJ) 6.

There are four significant questions in this case:

1. The first question is whether the booths of the Democratic and Republican Parties at the Clark County Fair constituted a "political gathering" within the meaning of Canon 7(A)(2) of the Code of Judicial Conduct.

2. The second question is whether payment of $65 by the campaign committee for a nonpartisan judicial candidate (Appellant Stoker) to the Democratic Committee for access to a booth constituted a permissible payment for rent only

---

[7]Report and Recommendation of Subcommittee; Commission Papers ("I").

or constituted a contribution in violation of Canon 7(A)(2) of the Code of Judicial Conduct.

3. The third question is whether Appellant Stoker's campaign activities at the Clark County Fair constituted false, misleading and deceptive campaign advertising in violation of Canon (7)(B) of the Code of Judicial Conduct.

4. The fourth question is whether the appearance of a nonpartisan judicial candidate (Appellant Stoker) in or in immediate proximity to the Democratic and Republican Party booths at the Clark County Fair constituted campaign activity prohibited by Canon 7(A)(2) of the Code of Judicial Conduct.

Canon 7 of our Code of Judicial Conduct is not ambiguous in its application to this case. That Canon reads in its entirety:

CANON 7 — JUDGES SHOULD REFRAIN FROM POLITICAL ACTIVITY INAPPROPRIATE TO THEIR JUDICIAL OFFICE

(A) Political Conduct in General.

(1) Judges or candidates for election to judicial office should not:

(a) act as leaders or hold any office in a political organization;

(b) make speeches for a political organization or candidate or publicly endorse a nonjudicial candidate for public office;

(c) solicit funds for or pay an assessment or make a contribution to a political organization or nonjudicial candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions, except as authorized in Canon 7(A)(2);

(2) Judges holding office filled by public election between competing candidates or candidates for such office, may attend political gatherings and speak to such gatherings on the judge's own behalf or that of another judicial candidate. Judges or candidates shall not identify themselves as members of a political party, and judges shall not contribute to a political party or organization.

(3) Judges shall resign their office when they become candidates either in a party primary or in a general election for a nonjudicial office, except that they may continue to hold their judicial office while being a candidate for election to or serving

as a delegate in a state constitutional convention, if they are otherwise permitted by law to do so.

(4) Judges should not engage in any other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice.

(B) Campaign Conduct.

(1) Candidates, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

(a) should maintain the dignity appropriate to judicial office, and should encourage members of their families to adhere to the same standards of political conduct that apply to them;

(b) should prohibit public officials or employees subject to their direction or control from doing for them what they are prohibited from doing under this canon; and except to the extent authorized under Canon 7(B)(2) or (B)(3), they should not allow any other person to do for them what they are prohibited from doing under this canon;

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce their views on disputed legal or political issues; or misrepresent their identity, qualifications, present position, or other fact.

(d) should not permit false, misleading, or deceptive campaign advertising to be published or broadcast in behalf of their candidacy.

(2) Candidates, including an incumbent judge, for a judicial office that is filled by public election between competing candidates should not themselves solicit or accept campaign funds, but they may establish committees of responsible persons to secure and manage the expenditure of funds for their campaign and to obtain public statements of support for their candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers or others. Candidates' committees may solicit funds for their campaign no earlier than 120 days from the date when filing for that office is first permitted and no later than 30 days after the last election in which they participate during the election year. Candidates should not use or permit the use of campaign contributions for the private benefit of themselves or members of their families. Candidates should comply with all laws requiring public disclosure of campaign finances.

(3) An incumbent judge who is a candidate for retention in or reelection to office without a competing candidate, and whose candidacy has drawn active opposition, may campaign in response thereto and may obtain publicly stated support and campaign funds in the manner provided in Canon 7(B)(2).

■ ■ Rules adopted by this court are approached as if they were drafted by the Legislature, and words are given their ordinary meaning.[8]

Article 4, section 31 of our state constitution establishes certain procedures for the Commission on Judicial Conduct:

> Whenever the commission receives a complaint against a judge or justice, it shall first conduct proceedings for the purpose of determining whether sufficient reason exists for conducting a hearing or hearings to deal with the accusations. These initial proceedings shall be confidential, unless confidentiality is waived by the judge or justice, but all subsequent hearings conducted by the commission shall be open to members of the public.[9]

All papers of the Commission, including the identity of complainants, are exempt from public disclosure requirements of RCW 42.17[10] during an investigation or initial proceeding. Prior to the public hearing, however, all records of the initial proceeding used as the basis for a finding of probable cause are subject to the public disclosure requirements of RCW 42.17.[11] The Commission is subject to the Open Public Meetings Act of 1971, RCW 42.30, but "investigations, initial proceedings, public hearings, and executive sessions involving the discipline or retirement of a judge or justice . . . are exempt from" that act.[12] Investigations and initial proceedings of the Commission are confidential.[13]

The Commission is authorized, after notice and hearing, to impose the following disciplinary sanctions, in increasing order of severity: (a) admonishment; (b) reprimand; or

---

[8]*In re Blauvelt*, 115 Wn.2d 735, 741, 801 P.2d 235 (1990) (citing *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979)).

[9]*See* WAC Title 292 for specific organization and procedures of the Commission on Judicial Conduct.

[10]RCW 2.64.110.

[11]RCW 2.64.111.

[12]RCW 2.64.115.

[13]RCW 2.64.113.

(c) censure.[14] Under RCW 2.64.010, the Commission may recommend the sanctions of suspension or removal. The Supreme Court may censure, suspend or remove a judge.[15]

Since November 1989 adjudicative proceedings, judicial review, and civil enforcement provisions of the Administrative Procedure Act, RCW 34.05, do not apply to investigations, initial proceedings, public hearings, or executive sessions involving the discipline of a judge.[16]

■ While this court will give "considerable weight" to the recommendations of the Commission, the Commission's recommendation is reviewed de novo. "This court has '[t]he duty, authority, burden and responsibility of determining and making the actual judgment, together with the imposition of whatever penalty may be appropriate or necessary'".[17]

## I
## POLITICAL GATHERING

Canon 7(A)(1)(c) prohibits judges or candidates for election to judicial office from attending political gatherings except as authorized in Canon 7(A)(2),[18] which allows judges to attend political gatherings and speak to such gatherings in support of their own candidacy or that of another judicial candidate. Judges may not identify themselves as members of a political party nor contribute to a political party or organization.[19]

---

[14]RCW 2.64.055. *See* RCW 2.64.010.

[15]"The supreme court may censure, suspend, or remove a judge . . . for violating a rule of judicial conduct . . .." Const. art. 4, § 31 (amend. 77).

[16]RCW 2.64.092, effective if the then proposed constitutional amendment were approved by voters. The amendment (Const. art. 4, § 31 (amend. 85)) was approved November 7, 1989.

[17]*In re Blauvelt*, 115 Wn.2d 735, 744, 801 P.2d 235 (1990) (citing *In re Kaiser*, 111 Wn.2d 275, 279, 759 P.2d 392 (1988); *In re Deming*, 108 Wn.2d 82, 87, 736 P.2d 639, 744 P.2d 340 (1987)).

[18]Canon 7(A)(1)(c).

[19]Canon 7(A)(2).

■ Judicial candidates have traditionally used the Clark County Fair as a place to meet people and to disseminate campaign literature.[20] In this context, the Clark County Fair might broadly be characterized as a political gathering. It would be merely a recreational gathering without political booths and political campaigning. Simply because organizers of the fair encourage political activity by inviting all political parties and individual candidates to set up booths and meet the public does not, however, make the Clark County Fair in fact a political gathering. Most people who attend county fairs do so to see entertainers, livestock and various displays. Unlike political picnics and gatherings, fairs are attended primarily for recreation and enjoyment and not for political debates or for supporting political candidates. By the very nature of county fairs as they have operated in this state over the years, we conclude that the Clark County Fair was not a political gathering as contemplated by Canon 7(A)(2).

## II
### PAYMENT OF $65 BY THE STOKER CAMPAIGN COMMITTEE TO THE DEMOCRATIC COMMITTEE

Canon 7(A)(2) of the Washington Code clearly states that "judges shall not contribute to a political party or organization."

As of 1990, Washington is one of 11 states which elect judges by nonpartisan election.[21] However, not all of those states have adopted in its entirety the Model Code provision on political contributions.[22] Unlike Washington, some states

---

[20]Commission Papers ("M").

[21]*See* P. McFadden, *Electing Justice: The Law and Ethics of Judicial Election Campaigns* 177 (1990). The other states are: Georgia, Idaho, Kentucky, Louisiana, Minnesota, Montana, Nevada, North Dakota, Oregon and Wisconsin. Some states use a "mixed method" for election of judges: Arizona, California, Florida, Indiana, Kansas, Michigan, Missouri, New York, Ohio, Oklahoma, South Dakota and Tennessee.

[22]Canon 5(A)(1)(e) of the Model Code of Judicial Conduct (1990) states that "[e]xcept as authorized in Sections 5B(2), 5C(1) and 5C(3), a judge or a candidate for election or appointment to judicial office shall not . . . solicit funds for,

have entirely omitted restrictions on political contributions. For example, Michigan's Code explicitly authorizes contributions to political parties by judicial candidates. Because of the "mixed method" for election of judges in that state, though, judges may run on either a partisan or a nonpartisan ticket.[23]

Appellant Stoker argues that his campaign committee made an obligatory payment of $65 to the Democratic Party as a pro rata share of rent in order to have access to the Democratic booth at the fair. He cites a 1977 Florida State Judicial Ethics Advisory Opinion to support his argument that the fee paid should be characterized as rent and not as a political contribution to the Democratic Party.[24] In that opinion, a county circuit court judge was permitted to pay printing costs for the local high school football program. The candidate's name and picture were printed in the program along with other elected county officials with partisan identification, even though the judicial position was nonpartisan.[25]

■ Faced with the prospect of Appellant Stoker not being able to appear at the Democratic booth at the Clark County Fair if his campaign committee did not pay the $65 rental fee, his committee did pay it on the express written condition that it was a required rental fee and not a contribution to the Democratic Party. No similar rental fee was required by the Republican Party. Appellant was thus able to appear

---

pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions." Compare with almost identical Washington Canon 7(A)(1)(c) which provides that judges should not "solicit funds for or pay an assessment or make a contribution to a political organization or nonjudicial candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions, except as authorized in Canon 7(A)(2)".

[23]Michigan Code of Judicial Conduct Canon 7(A)(2)(c).

[24]American Judicature Society, *Digest of Judicial Ethics Advisory Opinions* 117 (1991) (summarizing Florida Advisory Opinion 77-16 (Sept. 6, 1977)).

[25]*Digest of Judicial Ethics Advisory Opinions*, at 117.

at both the Democratic and the Republican booths at the Clark County Fair. Unquestionably, Appellant Stoker would be prohibited by Canon 7(A)(2) from making a *contribution* of any amount to the Democratic Party or to any other political party. But, while the $65 payment was made to a political party, it was documented as payment for use of space — a requirement imposed upon all candidates using the space. There was no evidence to the contrary. We conclude that, under the particular facts of this case, the payment was not a political contribution prohibited by Canon 7(A)(2).

### III
#### FALSE, MISLEADING AND DECEPTIVE
#### CAMPAIGN ADVERTISING

Canon 7(B)(1)(d) of the Washington Code prohibits the publication or broadcasting of "false, misleading, or deceptive campaign advertising". The false, deceptive and misleading advertising alleged against Appellant Stoker by the Commission is asserted by the claim that by campaigning from the booths of the Democratic Party and the Republican Party and by placing his campaign literature and signs in those booths, he "gave the impression either that he was running as a Democrat, or enjoyed the support of the Democratic Party, or that he was running as a Republican with Republican Party support. At best, he gave the impression that he was running a bipartisan not a non-partisan campaign for judicial office".[26]

The Commission argues that Canon 7(B)(1)(d) proscribes advertising which is indirectly or impliedly misleading.[27] It relies on *In re Pratt*[28] and *In re Kay*[29] to support that proposition. In *Pratt* and *Kay*, the Florida Supreme Court

---

[26]Commission Decision, at 3; Commission Papers ("B").

[27]Brief of Appellee, at 18.

[28]508 So. 2d 8 (Fla. 1987).

[29]508 So. 2d 329 (Fla. 1987).

admonished two judicial candidates for mailing advertisements which resembled official sample ballots.[30] While Judges Kay and Pratt did not state that they were members of either the Democratic or Republican Parties, each of their "sample ballots" was clearly labeled as either "Democratic" or "Republican". The court found that mailing the sample ballots violated a Florida statute which provides that a candidate for judicial office shall not campaign as a member of any political party or publicly represent or advertise as a member of any political party.[31] Even though there was not a clear violation of the statute, the Florida Supreme Court nevertheless admonished them because the sample ballots gave the "appearance" that the judges were endorsed by the Democratic Party and by the Republican Party. The Commission in this case argues that the Florida statute is similar to Canon 7(A)(2) and that our Code states, in pertinent part, that "[J]udges or candidates shall not identify themselves as members of a political party".

None of Appellant Stoker's conduct in this case can be equated with the conduct of the judicial candidates in *Pratt* and *Kay*, where those judges disseminated "sample ballots" separately marked "Republican" and "Democratic". Any identification by Appellant Stoker with either political party occurred, if at all, by the mere fact of his presence in the Democratic Party booth and the Republican Party booth, with distribution of his campaign literature in both booths.

In *In re Kaiser*,[32] this court considered, among other issues, whether statements made by Judge Kaiser were in violation of Canon 7(B)(1)(d). The court determined that even though statements made by Judge Kaiser during a campaign violated the strict terms of Canon 7(B)(1)(d), they were constitutionally protected and there was no violation. The court reasoned that where political speech is at issue,

---

[30]*In re Pratt, supra; In re Kay, supra.*

[31]Fla. Stat. Ann. § 105.071 (West 1982).

[32]111 Wn.2d 275, 759 P.2d 392 (1988).

disciplinary rules are subject to exacting scrutiny under the First Amendment.[33] The court had previously held that free speech guaranties do not apply in discipline cases.[34] This court concluded that Judge Kaiser was "subject to discipline only where the disciplinary rule serves a compelling state interest and where the rule is drawn and applied in a narrowly tailored fashion."[35]

■ We conclude that Appellant Stoker, by campaigning from the booth of the Democratic Party and the booth of the Republican Party at the Clark County Fair in August 1990 did not violate Canon 7(B)(1)(d). He did not identify himself as a member of "a political party". None of his literature suggested or implied his identification with a political party, although on hindsight, it more properly should have explicitly identified him as a *nonpartisan judicial candidate*. We cannot agree with the Commission that Appellant Stoker, merely by consequence of his appearance and placement of his campaign literature in the booths of both the Democratic Party and the Republican Party, impliedly identified himself as a member of either or both parties. This is too narrow an interpretation of Canon 7(B)(1)(d) and places any nonpartisan judicial candidate at risk, despite every reasonable and good faith effort to comply with the letter and spirit of the Code of Judicial Conduct.

## IV
### BIPARTISAN CAMPAIGN ACTIVITY

Canon 7(A)(2) states, in part, that judges or candidates for judicial office "shall not identify themselves as members of a political party". Additionally, Canon 7(B)(1)(c) provides that they should not "misrepresent their identity, qualifications, present position, or other fact."

---

[33]*Kaiser*, at 284 (citing *In re Primus*, 436 U.S. 412, 56 L. Ed. 2d 417, 98 S. Ct. 1893 (1978)); *NAACP v. Button*, 371 U.S. 415, 438, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963).

[34]*Kaiser*, at 284 (citing *In re Donohoe*, 90 Wn.2d 173, 580 P.2d 1093 (1978)).

[35]*Kaiser*, at 287.

The Commission states that Judge Stoker impliedly misled fairgoers by giving the appearance that he was endorsed by both political parties for his reelection to the bench.[36] In conclusion 2, the Commission notes:

> A given fairgoer, passing by the booth [Judge Stoker] was occupying at the time, would be given the distinct impression that he was supported or endorsed by that political party. Therefore, [in violation of CJC 7(A)(2)] he was identifying himself as a member of a particular political party to numerous Clark County voters, which would vary depending on the particular booth he was occupying at the time.

Commission Papers ("I").

■ While we must hold judges and judicial candidates to the highest standards of conduct, we must, at the same time, avoid, without a clear factual basis, reading into proper conduct "implied" results which constitute violations of the Code of Judicial Conduct.

■ Judge Stoker argues that judicial candidates welcome and accept endorsements of various organizations, including political parties. The issue here, though, is whether his appearance in the Democratic booth and the Republican booth constituted prohibited *bipartisan political conduct.* We are not convinced that the Washington Code prohibits nonpartisan judicial candidates from being endorsed by a political party if it is clear that the endorsement does not imply membership or participation by the judicial candidate in that party. In that sense, *bipartisan* identification is not of itself prohibited, particularly where, as here, the judicial candidate made every reasonable effort to balance his involvement at the Clark County Fair equally between booths of the Democratic Party and the Republican Party without favoring one over the other.

The Oxford Dictionary defines "partisan" as "[o]ne who takes part or sides with another; an adherent or supporter of a party, person, or cause."[37] "Bipartisan" has been defined

---

[36]Commission Decision, at 3; Commission Papers ("B").

[37]*The Oxford English Dictionary* (1961).

as "representing, or composed of members of, two parties."[38] While the Code of Judicial Conduct prohibits *partisan* activities, there is no similar prohibition of *bipartisan* activities where the judicial candidate is operating under the constraints of Canon 7 of the Code of Judicial Conduct.

Appellant Stoker relies on traditions and campaign practices of past judicial candidates to justify his actions. But the Commission assumed that any fairgoer, even one familiar with the nonpartisan nature of judicial elections, could reasonably have concluded that Judge Stoker was in a particular booth because he was endorsed by the party sponsoring the booth. It is not a violation of Canon 7 for a judicial candidate to be endorsed by political parties. It is the identification as a member of a political party which is prohibited by Canon 7(A)(2).

Under the evidence before us, we conclude that Appellant Fred J. Stoker made every reasonable and good faith effort to comply with the requirements of the Code of Judicial Conduct in the course of his campaign for reelection to the nonpartisan position of judge of the Clark County District Court incident to his appearance in the Democratic and Republican booths at the Clark County Fair, August 3 through 12, 1990. We further conclude that he did not violate the Code of Judicial Conduct as charged by the Commission on Judicial Conduct. We therefore overrule the Commission and dismiss the case.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

ANDERSEN, J., concurs in the result.

---

[38]*Webster's New International Dictionary* (2d ed. 1934).