[No. C.D. 3897.   En Banc.   February 7, 1974.]

*In the Matter of the Disciplinary Proceeding Against*
*Thomas P. Delaney, an Attorney at Law.*

*Thomas P. Delaney,* pro se.

*Robert O. Wells, Jr.,* for Bar Association.

STAFFORD, J.—This is a consolidation of two disciplinary actions instituted by the Washington State Bar Association (hereinafter called the Bar) against the respondent, Mr. Thomas P. Delaney. In each of the two cases the hearing panel (hereinafter called the Panel) took testimony following which findings of fact, conclusions of law and recommendations were made and forwarded to the disciplinary board (hereinafter called the Board). In each case the Board reviewed the case and adopted the findings, conclusions and recommendations of the Panel and forwarded them to this court. For the sake of clarity, the two cases will be discussed separately and we shall hereafter refer only to the Panel's findings and conclusions.

The record reveals that respondent was admitted to the practice of law in this state on March 18, 1952. On May 21, 1965, he received a reprimand. There is no further indication of disciplinary action against him.

I

THE HEARING OF DECEMBER 6, 1972

A

The findings concerning the first item of the complaint

reveal that respondent was retained to represent Mrs. Saranovich and Mr. Seward in the sale of real property by Mr. Seward to Mrs. Saranovich.

On December 16, 1971, Mrs. Saranovich delivered to respondent a cashier's check payable to Mr. Seward in the amount of $1,500. Respondent was instructed to keep the check in his safe pending its delivery to Mr. Seward upon the closing of the transaction.

Contrary to assurances given his clients, and without authority so to do, respondent endorsed the cashier's check "John Seward, Thomas P. Delaney, his attorney, trust account," and deposited the entire amount in his trust account. Thereafter, respondent withdrew the $1,500 and converted the funds to his own uses and purposes.

The clients did not discover that the check had been negotiated until the transaction was ready to be closed. Thereafter Mr. Seward filed an affidavit of forgery and restitution was made by obtaining funds from respondent's general office account.

B

Concerning the second item of complaint, respondent was retained on or about January 1971 to represent Mr. Walters. The dispute involved Mr. Walters' refusal to pay closing costs on a house until United Builders of Yakima corrected deficiencies in the building.

On November 1, 1971, Mr. Walters and United agreed that United would make certain repairs provided $1,242.97 was placed in escrow. On December 4, 1971, Mr. Walters gave respondent $1,251.66 to be held in trust for the settlement with United. On December 6, 1971, respondent deposited the full amount in his trust account. Shortly thereafter respondent withdrew the money, commingled it with his own funds and utilized it for his own purposes.

On December 22, 1971, respondent sent a letter to Commerce Mortgage Company, trustee under the proposed deed of trust, with a copy to United, indicating that he held $1,171.66 in his trust account pending approval of the re-

quired repairs. In January 1972, Mr. Walters gave respondent an additional $145, one month's deed of trust payment, to be held in trust by respondent pending resolution of the dispute. Thereafter, Mr. Walters authorized respondent to use $80 of the original $1,251.66 as attorney's fees. However, no further authorization was given respondent to withdraw or use other funds.

In March 1972, United commenced an action against Mr. Walters and respondent praying alternatively for specific performance of the earnest money agreement between United and Mr. Walters, or for delivery of the $1,171.66 that respondent had indicated he held in trust. In a deposition taken in August of 1972, long after the trust funds had been converted to his own use, respondent stated he held $1,316.66 in his trust account for Mr. Walters.

In September 1972, a proposed stipulation was discussed in which Mr. Walters would agree, among other things, to pay immediately the sum of $1,160, to make an additional payment of $145 on or before October 2, 1972, and to make monthly payments beginning November 1, 1972. At about this time respondent first informed Mr. Walters that the $1,251.66 given to him to be held in trust was not available, whereupon Mr. Walters informed respondent it would be impossible to carry out the proposed stipulation.

Respondent suggested that Mr. Walters inform United that he, respondent, had been authorized to use the funds for attorney's fees, but Mr. Walters refused. Thereafter, respondent prepared two written agreements, one obligating himself to pay United, on Walters' behalf, $1,597 at the rate of $75 a month. The other agreement, prepared for Mr. Walters' signature, provided that $750 was a reasonable attorney's fee and that it had been paid to respondent. Based upon these written assurances by respondent, Mr. Walters agreed to the proposed stipulation with United. A few days thereafter respondent presented Mr. Walters with a statement of attorney's fees reciting that $155 had been paid and that $1,566.12 was due and owing as attorney's fees.

Respondent had made no payments to United pursuant to

the agreement. Accordingly, United, at the time of the disciplinary hearing on December 6, 1972, had given notice that it would record a quitclaim deed from Mr. Walters, held in escrow pursuant to the stipulated settlement, unless payment of the closing costs was made promptly. At the time of the hearing, respondent had not repaid Mr. Walters the funds left with him in trust (*i.e.*, $1,251.66 plus $145 less the $80 which Mr. Walters had authorized to be applied to attorney's fees).

## C

The findings pertaining to the third item of complaint reveal that on January 12, 1972, respondent was retained to represent Mrs. Saranovich in a contemplated divorce action. Mr. Saranovich paid respondent $150 toward costs and attorney's fees. Thereafter the parties reconciled and asked respondent to return the $150.

At first respondent refused to return the amount, but later issued a check to Mr. Saranovich at which time Mr. Saranovich paid him a very minimal attorney's fee. However, when Mr. Saranovich attempted to cash the check, it was returned because of insufficient funds.

After making several unsuccessful demands upon respondent for payment of the check, Mr. Saranovich retained another attorney who succeeded in collecting $140 from respondent, the $10 difference representing an additional attorney's fee charged by respondent. The action to obtain payment of the NSF check cost Mr. Saranovich another $50 attorney fee.

## D

The fourth item of complaint was concerned with whether there were sufficient facts to evidence a course of conduct demonstrating unfitness to practice law. In light of subsequent events and since this court had no opportunity, at that time, to take action upon the findings of fact, conclusions of law and recommendations of the Board, we will not discuss them at this juncture. The only recommendation of immediate concern, arising out of the December 6, 1972, hearing, was that "all prior disciplinary proceedings

be accorded due evidentiary weight in the event that further complaint against respondent attorney is made."

## II
### RESPONDENT'S TEMPORARY SUSPENSION FROM PRACTICE
### JUNE 6, 1973, PURSUANT TO DRA 9.2

Subsequent to the December 6, 1972, hearing, the Bar received additional complaints about respondent. Accordingly, a second hearing was convened. Further, the Board, acting pursuant to DRA 9.2 petitioned this court for respondent's immediate suspension from the practice of law pending the new hearings. The motion was heard by this court on June 5, 1973, after notice to respondent. As a result, on June 6, 1973, we entered an order suspending respondent from the practice of law during the pendency of the new disciplinary proceedings.

## III
### THE DISCIPLINARY HEARING OF AUGUST 1, 1973

Acting pursuant to notice, the Panel took testimony on August 1, 1973, and entered its findings of fact, conclusions of law and recommendations on August 8, 1973. These were forwarded to the Board and were adopted.

## A

No findings, conclusions or recommendations were made on the first item of complaint inasmuch as the complainant did not appear.

## B

Insofar as the second item of complaint is concerned, the findings reveal that respondent was a defendant in a lawsuit. Plaintiff's motion for summary judgment was set for hearing March 16, 1973. On March 14, respondent presented opposing counsel, and filed with the court, his signed affidavit asserting that he would be unable to attend the March 16 hearing because of an appointment with Dr. Robert Corbett. The affidavit was false. Respondent had no appointment with the doctor.

## C

The third item of complaint reveals that in September of 1971, respondent undertook the representation of Mr. Rob-

ert Ludolph, special administrator for an estate. Respondent received, on behalf of the estate, a $50 check as payment for the purchase of a small piece of realty from the estate. Further, Mr. Ludolph wrote checks for $85 and $350 on the estate bank account and gave them to respondent for the purchase of an administrator's bond and for the payment of inheritance tax, respectively. Respondent negotiated the three checks, commingled the proceeds with his own funds and used the money for his own purposes. He failed and refused to account to Mr. Ludolph for the funds so appropriated.

## D

Insofar as the fourth item of complaint is concerned, the findings indicate that on October 5, 1971, respondent was retained by Mr. Bruce to close a real estate transaction. Mr. Bruce gave respondent $200 to be used as the final payment. Respondent converted the $200 to his own use, and, despite frequent demands, has failed to render an accounting.

## E

Concerning the fifth item of complaint the findings reveal that between January and March of 1972 respondent received $720 from Mr. Maier. Respondent was to use the money to pay certain of Mr. Maier's creditors. Three hundred and ninety dollars and twenty-eight cents was used by respondent as instructed, but the balance was commingled with his own funds and converted to his own uses and purposes. Despite Mr. Maier's demands, respondent has failed to account for the converted funds.

## F

The findings pertaining to the sixth item of complaint reveal that for at least the past year respondent has customarily spent the greater part of each working day in a bar, apparently under the influence of alcohol. During at least the past year he has issued several personal checks knowing that there were insufficient funds for honoring them. On at least two occasions during the past year, respondent has appeared in municipal court apparently under

the influence of intoxicating beverages, and unable to properly represent his clients.

## IV

### CONCLUSIONS

Concerning the hearing of December 6, 1972, the Panel concluded and the Board agreed that the acts and omissions relating to the first and second items of complaint constituted violations of DRA 1.1(a), (c) and (j) insofar as the latter pertained to (CPR) DR 9-102 and to former CPE 11. The acts and omissions found in item three of the complaint violated DRA 1.1(c) and (j) insofar as the latter pertained to (CPR) DR 1-102(A)(6) and (CPR) DR 9-102(B)(4).

Concerning the hearing of August 1, 1973, the Panel concluded and the Board agreed that they could make no conclusions as to item one, the complainant having failed to appear. As to the second item of complaint, however, it was concluded that there had been violations of DRA 1.1(a), (c) and (j) insofar as the latter pertains to (CPR) DR 7-102(A)(4), (5), (6), (7) and (8). It was also concluded that in the third item of complaint there had been violations of DRA 1.1(a), (c) and (j) insofar as the latter pertains to (CPR) DR 9-102 and former CPE 11 as well as DRA 1.1(m). Insofar as the fourth and fifth items are concerned, it was concluded that there had been violations of DRA 1.1(a), (c) and (j) insofar as the latter pertained to (CPR) DR 9-102 and former CPE 11, as well as DRA 1.1(m). Finally, it was concluded in the sixth item of complaint that considering the totality of the findings in complaint items two through five that there was a violation of DRA 1.1(m) in that respondent's conduct demonstrated a course of conduct demonstrating unfitness to practice law.

We have reviewed the entire record and find substantial evidence to support the findings and conclusions of the Board, issued in both the first and second hearings. With respect to the items of formal complaint heard on December 6, 1972, we agree with the conclusions that respondent has violated DRA 1.1(a) by conduct involving moral turpi-

tude; disobeyed DRA 1.1(c) by violating his oath of attorney and duties; and, has violated DRA 1.1(j) insofar as it pertains to former CPE 11 (trust property), (CPR) DR 1-102(A)(6) by engaging in conduct that adversely reflects on his fitness to practice law, (CPR) DR 9-102(A) which requires an attorney to preserve the identity of his clients' funds, and (CPR) DR 9-102(B)(4) concerning a lawyer's duty to promptly pay or deliver on request, to his client, funds or other property which the client is entitled to receive.

With respect to the items of complaint heard on August 1, 1973, we also agree with the conclusions of the Board that respondent has violated in a similar way DRA 1.1(a) and DRA 1.1(c). DRA 1.1(j) has also been violated insofar as it pertains to (CPR) DR 7-102(A)(4) by the knowing use of perjured testimony or false evidence, DR 7-102(A)(5) by knowingly making false statements of law or fact, DR 7-102(A)(6) by participating in the creation or preservation of evidence he knew was false, DR 7-102(A)(7) by counseling or assisting a client in conduct known to the lawyer to be illegal or fraudulent, and DR 7-102(A)(8) by knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule. We further agree that respondent has disobeyed DRA 1.1(j) insofar as it pertains to (CPR) DR 9-102 and to former CPE 11. Finally, we agree with the Board's conclusion that respondent has violated DRA 1.1(m) in that he has pursued a course of conduct demonstrating unfitness to practice law.

## V

### RECOMMENDATIONS OF THE DISCIPLINARY BOARD

Based upon the findings and conclusions made in both the hearing of December 1, 1972, and the hearing of August 1, 1973, the Board has recommended that respondent be permanently disbarred from the practice of law.

Considering the total record before us, it is clear that respondent has demonstrated his unfitness to practice law. As we said in *In re Kennedy*, 80 Wn.2d 222, 240, 492 P.2d 1364 (1972):

In making the determination we consider the seriousness and circumstances of the offense as well as the following standards:

1. A punishment of the offender, which should be sufficient to prevent reoccurrence.
2. A penalty sufficient to deter other practitioners from engaging in such conduct.
3. Punishment sufficient to restore and maintain respect for the honor and dignity of the profession, and to assure those who seek the services of lawyers that the penalties for unprofessional conduct will be strictly enforced.

With the foregoing standards in mind, we adopt the recommendations of the Board and permanently disbar Mr. Thomas P. Delaney from the practice of law in the state of Washington. The clerk of the court is directed to strike his name from the roll of practicing attorneys.

We confirm the statement of costs and supplemental statement of costs claimed by the Bar pursuant to DRA 7.1 *et seq.*

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.