100 Wn.2d 396 (1983)
669 P.2d 1248
In the Matter of the Disciplinary Proceeding Against MARVIN C. BUCHANAN, Judge of the District Court and the Municipal Court.
No. J.D. 1.
The Supreme Court of Washington, En Banc.
October 6, 1983.
*397 WILLIAMS, C.J.
This is a case of first impression. It involves judicial disciplinary proceedings against Judge Marvin C. Buchanan who violated various canons of the Code of Judicial Conduct. From the facts, as found by the Judicial Qualifications Commission, we find that there was clear, cogent and convincing evidence that Judge Buchanan's conduct did not comport with the high standards imposed on judges in this state. We therefore adopt the recommendation of the Judicial Qualifications Commission and order that he be publicly censured.

I
In 1974, Marvin C. Buchanan was appointed as judge of the Island County District Court. He also served as municipal court judge of Oak Harbor, the principal location of the District Court for Island County. He continued to serve as district court judge through the date of the Judicial Qualifications Commission proceedings in this case. He did not, however, seek reelection in 1982 and is presently retired.
Acting on a complaint, the Commission conducted a factfinding hearing which commenced on June 30, 1982. The Commission subsequently determined that during courtroom appearances Judge Buchanan competently and respectfully handled his duties. His conduct outside the courtroom, however, fell far short of that expected of a judicial officer. As to his other professional dealings, the Commission found that the judge instructed his staff not to cooperate with one attorney whom he referred to as "a little rich Jew kid", and a "rich, rotten, spoiled Jew". On another occasion, the judge disrupted courtroom proceedings being held by a judge pro tempore in order to continue an argument *398 with an attorney appearing in that court. He demanded that the pro tempore judge not hear the case and stormed out of the courtroom deliberately pushing the attorney and his client. At other times, the judge, in uncontrolled outbursts of temper, became loud and abusive to members of his staff while they were seeking to assist members of the public. He treated members of the public with similar disdain.
Apart from public displays of temper, the judge acted in an undignified manner in his personal dealings with women employees of the court. He freely commented about the size of one staff member's breasts and speculated about the type of lingerie the employees wore. He requested that one employee wear certain clothing which, according to the judge, "looked sexy on her". He talked with one clerk about her "womanly odor" and referred to one clerk as "young, tender flesh". The Commission also found that the judge hugged and kissed one clerk in a manner which was offensive and embarrassing. Women job applicants were subjected to personal and irrelevant questions regarding possible jealousies of their spouses. Questions about willingness to fly with the judge in his personal airplane or go on personal boating outings were also asked of applicants. Despite displeasure with the judge's overall conduct, the employees tolerated this conduct out of fear of reprisals. These fears were shown to be well founded, for upon learning of the complaint in this case, the judge terminated the employment of two women staffers. This was done despite the fact that he had previously expressed satisfaction with their job performance.
In testimony before the Commission the judge either denied engaging in the complained of conduct or explained that some of his remarks were taken out of context. The Commission found the testimony unpersuasive and recommended censure. Judge Buchanan has neither contested these findings nor has he appeared to challenge the recommended discipline.

*399 II
To facilitate the investigation of complaints of violation of the various sections of the Code of Judicial Conduct, the Judicial Qualifications Commission was created by the adoption of Const. art. 4, § 31 (amend. 71). That provision empowers the Commission to investigate, conduct hearings, make recommendations to the Supreme Court, and to establish procedural rules for judicial disciplinary proceedings. Procedural rules were adopted by the Commission in October 1981 and set out in State Register XX-XX-XXX. Under the Judicial Qualifications Commission Rules (JQCR) the standard of proof in judicial disciplinary proceedings is that "[t]he fact-finder must find by clear, cogent, and convincing evidence that the judge has violated a rule of judicial conduct ..." JQCR 14(d).
Applying this standard, the Commission found that three canons of the Code of Judicial Conduct had been violated. Those canons provide in relevant part that:
A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.
Canon 1.
A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 2(A).
A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
Canon 3(A)(3).
The record is replete with instances of inappropriate judicial conduct. We thus agree with the Commission's findings.
[1] Although in this first judicial discipline case we *400 accept the Commission's findings, those findings are by no means binding upon this court. Instead, as in attorney discipline cases, the administrative body's findings are not conclusive. See In re Simmons, 81 Wn.2d 43, 45, 499 P.2d 874 (1972); In re Pennington, 73 Wn.2d 601, 440 P.2d 175 (1968). Those findings will, however, be given considerable weight. Though not conclusive, we now rule that the facts as found by the Commission provide overwhelming support for a finding of misconduct. Having so concluded we need only pass upon the appropriate disciplinary measure.
The range of sanctions in this case is limited by Const. art. 4, § 31 (amend. 71), which provides:
The supreme court may censure, suspend, or remove a judge or justice for violating a rule of judicial conduct ...
The Commission has recommended that Judge Buchanan be censured.
[2] In determining the appropriate penalty in cases of judicial misconduct, we again look to attorney discipline cases. As in those cases, serious consideration will be given to the recommendation of the administrative body. See In re Espedal, 82 Wn.2d 834, 514 P.2d 518 (1973); In re Smith, 83 Wn.2d 659, 521 P.2d 212 (1974). The final decision, however, rests with this court. In making this decision, our primary concern will be to provide sanctions sufficient to restore and maintain the dignity and honor of the position and to protect the public from any future excesses. As in attorney discipline cases, these sanctions must also be sufficient to prevent reoccurrences. See In re Delaney, 83 Wn.2d 415, 518 P.2d 713 (1974). Censure is appropriate in this case because Judge Buchanan did not file for reelection and is no longer an Island County District Court or Oak Harbor Municipal Court judge. Thus, he cannot be suspended or removed from office. The several instances of sexual harassment (both verbal and physical), religious slurs, and the indication of retaliation against witnesses who testified against him before the Commission impugn the integrity of the judiciary and indicate Judge Buchanan's *401 own failure to comply with the law. Censure is the strongest available sanction and we hereby adopt the Commission's recommendation.
ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.