**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 9, 2026

*[signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 9, 2026

*[signature]*
SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re Disciplinary Proceeding Against | ) ) ) | No. 202261-8 |
| DAVID RUZUMNA,<br>Judge Pro Tempore. | ) ) ) ) | En Banc |
| _____ | ) ) | Filed: <u>April 9, 2026</u> |

JOHNSON, J.—This case involves a Commission on Judicial Conduct (Commission) decision censuring and recommending the removal of Mr. David Ruzumna, Judge Pro Tempore, from judicial office. Judge Pro Tem Ruzumna challenges that decision, arguing his conduct supports no more than an admonishment. The court has conducted a de novo review of the record and the parties' arguments and now determines that censure and removal is the appropriate sanction in this case.

BACKGROUND

The Commission charged Judge Pro Tem Ruzumna with violating Canon 1, rules 1.1, 1.2, and 1.3 of the Code of Judicial Conduct (CJC or Code). The

"Statement of Charges" alleged Judge Pro Tem Ruzumna committed judicial misconduct by

> using a stamp of the King County District Court seal and the signature stamp of an elected King County District Court judge without permission, and creating a fraudulent or misleading document which he presented to a parking attendant in an attempt to gain a discounted parking rate for county employees.[1]

Following a fact-finding hearing before a 10-member panel, the Commission concluded Judge Pro Tem Ruzumna violated CJC 1.1, 1.2, and 1.3. One member of the panel issued a concurrence in part and dissent in part, reasoning that Judge Pro Tem Ruzumna's misconduct did not amount to a violation of CJC 1.3 but agreeing with the ultimate sanction of censure and removal. The CJC Canon 1 rules provide:

> Rule 1.1. Compliance with the Law
> A judge shall comply with the law, including the Code of Judicial Conduct.
>
> Rule 1.2. Promoting Confidence in the Judiciary
> A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.
>
> Rule 1.3. Avoiding Abuse of the Prestige of Judicial Office
> A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so.

Critical to our decision in this case is that the allegations set forth in the Statement of Charges are not disputed. Judge Pro Tem Ruzumna admits to using

---

[1] Statement of Charges at 2.

the King County District Court seal and the signature stamp of the judge he was working for when he created a document in attempt to gain discounted parking. This undisputed misconduct at the very least supports a censure. We reject Judge Pro Tem Ruzumna's argument that this misconduct warrants only admonishment, which is the least severe disciplinary action the Commission can issue, given the offense.

FACTS AND PROCEDURAL HISTORY

Judge Pro Tem Ruzumna has served as a pro tempore (pro tem) judge for several different courts including the municipal courts of Seattle, Bothell, Kirkland, Mercer Island, and Everett; Snohomish County District Court; King County District Court; and King County Superior Court. He began serving as a pro tem judge in 2013 and also maintains a law practice. This case concerns his service in King County District Court. On the day the underlying incident occurred, he was serving as a pro tem for Judge Rebecca Robertson.

Judge Pro Tem Ruzumna had an ongoing dispute concerning a parking rate discount available to King County employees, which allowed a $10 reduction from the general $30 per day parking rate. On February 16, 2023, he created and presented a piece of paper to a parking attendant at the Goat Hill Garage with the following words typed on it:

> 2/16/2023
> David Ruzumna is employed with the
> King County District Court as
> a Judge Pro Tem.
> Directly underneath the typing was the signature stamp of King County

District Court Judge Rebecca Robertson, the date "Feb. 16 2023," and, next to that,

the King County District Court seal. Below is a photograph of the piece of paper:



Judge Pro Tem Ruzumna does not dispute that he did not have permission to

use the signature stamp. 1 Tr. of Test. of Fact-Finding Hr'g (Tr.) at 84, 247. He also

does not dispute that he put the date on the signature stamp to match the date of the

letter. 1 Tr. at 112.

Judge Pro Tem Ruzumna had parked in the Goat Hill Garage as a pro tem judge on several occasions over the preceding months. The garage is owned by King County and operated by a privately owned company that contracts with King County. It is commonly used by people working at or visiting the courthouse. The daily parking rate for the garage is $30, but employees receive a discounted rate of $20. To receive the discounted rate, King County employees can either (1) pay at a pay station that verifies their employment status or (2) show their badge or some other qualifying proof to the parking attendant at the booth. A placard at the pay station and the booth states, "'No county discount without ID.'" 1 Tr. at 58. Pro tem judges do not receive a badge.

Judge Pro Tem Ruzumna began parking in the Goat Hill Garage in January 2023. After being charged $30 by the parking attendant on this first occasion, he commented that the price seemed expensive. The attendant asked if he was a King County employee and whether he had a pay stub. Judge Pro Tem Ruzumna showed the attendant his name placard. 1 Tr. at 243. The attendant did not accept this as proof of employment. On a later date, Judge Pro Tem Ruzumna showed the attendant his judicial robe in an attempt to receive the discount. 1 Tr. at 246. The attendant did not accept it. Judge Pro Tem Ruzumna testified that all these exchanges were friendly and cordial. 1 Tr. at 258.

After several attempts to receive the discount, Judge Pro Tem Ruzumna created the aforementioned letter with Judge Robertson's signature stamp and the King County District Court seal. After this incident, human resources (HR) conducted an investigation and determined that Judge Pro Tem Ruzumna had created the letter and used the stamps without authorization. 1 Tr. at 142-44. Following the investigation, the court's executive committee unanimously voted to remove Judge Pro Tem Ruzumna from the pro tem list for King County District Court. 1 Tr. at 89. A member of the executive committee, Judge O'Toole, described the decision to remove Judge Pro Tem Ruzumna. Judge O'Toole explained that "whether Mr. Ruzumna was entitled to an employee discount or not was not the concern. The concern was the incredible lack of judgment in preparing this letter and affixing a judge's signature to it and then passing it off as true to parking officials was shocking, to say the least." 1 Tr. at 182-83.

Judge Pro Tem Ruzumna argued that he was entitled to the parking discount and that the photograph of the document is incomplete. He testified, and claimed from the outset, that the document he created was "covered in multiple random stamps" as a joke to display to the parking attendant that he should be entitled to the discount because there was no other way he would have access to the stamps unless he was an employee. 1 Tr. at 111, 116. He also testified that he believed he was an employee and was entitled to the parking discount. 1 Tr. at 242. Judge Pro

Tem Ruzumna was aware he did not receive benefits like vacation or sick leave, retirement, health insurance, or dental as a pro tem judge. 1 Tr. at 135. Judge Pro Tem Ruzumna did not at any point reach out to HR or the court administrator to clarify whether he was entitled to the discount. 1 Tr. at 278.

Heather Dean, the King County District Court budget director, testified that pro tem judges have not been eligible for the discount since at least 2005. 1 Tr. at 169-70. Kevin Whitley, the HR director who conducted the investigation into this incident, testified that pro tems are short-term, nonbenefited employees. He described those benefits as medical, dental, vision, life, ORCA card (regional transit pass), and parking, explaining that pro tem judges do not receive these employee benefits. 1 Tr. at 140, 142. Mr. Whitley also testified, based on measurements he did during the investigation, that there was not enough room left on the piece of paper to corroborate Judge Pro Tem Ruzumna's story that there were multiple other stamps on the document.[2] 1 Tr. at 147-50. Mr. Whitley testified that the piece of paper was a standard 8.5 x 11-inch size. 1 Tr. at 158-59.

The Goat Hill Garage manager, Regina De Los Santos, testified that there were no other stamps on the document. 1 Tr. at 61. Ms. De Los Santos was the only person other than Judge Pro Tem Ruzumna and the parking attendant who saw the

---

[2] Even if it were true that the document did have additional stamps, that is unimportant to our determination of whether the Code was violated.

document. After Judge Pro Tem Ruzumna showed the document to the parking attendant, he brought it to Ms. De Los Santos to verify whether it was acceptable. She did not accept it as proof of employment but took a photo in case it was later determined that Judge Pro Tem Ruzumna was eligible for the discount. Ms. De Los Santos testified that she gave the document back to the parking attendant and that in the ordinary course of business, the attendant would have returned the document to the customer. 1 Tr. at 64. The original document was never found. Judge Pro Tem Ruzumna testified he does not recall whether the document was given back to him. 1 Tr. at 255.[3]

The Commission ultimately determined the testimony of Ms. Dean, Mr. Whitley, and Ms. De Los Santos was more credible than that of Judge Pro Tem Ruzumna. The Commission found Judge Pro Tem Ruzumna's testimony "was complicated and at times contradicted his earlier testimony at the hearing, at his deposition, and his written statements to the Commission." Comm'n Decision & Ord. (Order) at 17. The Commission concluded that Judge Pro Tem Ruzumna violated CJC 1.1, 1.2, and 1.3, compounded by a unanimous finding that his ongoing dishonesty throughout disciplinary proceedings resulted in "irreparable damage to trust and confidence in him as a judicial officer." Order at 30. The

---

[3] The parking attendant left his employment shortly after these events occurred and could not be found for questioning. 1 Tr. at 79, 2 Tr. at 335.

ongoing dishonesty referred to is Judge Pro Tem Ruzumna's apparent attempts to minimize or justify his conduct by creating "a convoluted story" representing the document as a lighthearted means of showing the parking attendant he was entitled to the discount. Order at 29. Rather, the Commission found that Judge Pro Tem Ruzumna fabricated this story to conceal the truth in an effort to minimize or excuse his conduct. The Commission concluded that Judge Pro Tem Ruzumna attempted to falsely convey to the parking attendant that Judge Robertson approved his use of the discount. Based on these findings, the Commission recommended a censure and removal from judicial office.

ANALYSIS

The Commission exists to facilitate the investigation of complaints of misconduct by judges. WASH. CONST. art. IV, § 31 (amend. 71). This provision empowers the Commission to investigate, conduct hearings, establish procedural rules for disciplinary proceedings, and, in some cases, make recommendations to the Supreme Court to impose certain forms of discipline. *In re Disciplinary Proc. Against Buchanan*, 100 Wn.2d 396, 399, 669 P.2d 1248 (1983). The Commission may independently impose admonishment, reprimand, or censure. WASH. CONST. art. IV, § 31(4). Where the Commission recommends suspension, removal, or retirement of the judge, that authority exists exclusively in the Supreme Court. WASH. CONST. art. IV, § 31(5).

We review Commission decisions de novo. *In re Disciplinary Proc. Against Anderson*, 138 Wn.2d 830, 843, 981 P.2d 426 (1999). This standard does not mean we conduct a new evidentiary hearing, independent of the Commission. Rather, we review the findings of the Commission and conduct an independent evaluation of the record to determine whether the judge violated the Code and, if so, the appropriate sanction. The Commission must prove factual findings by clear, cogent, and convincing evidence. We are not bound by the Commission's findings or conclusions. *In re Disciplinary Proc. Against Turco*, 137 Wn.2d 227, 246, 970 P.2d 731 (1999). That being said, we give the Commission's findings and credibility determinations considerable weight as the body that had the opportunity to directly observe witnesses and their demeanor. *In re Disciplinary Proc. Against Deming*, 108 Wn.2d 82, 110, 736 P.2d 639 (1987).

1. Code Violations

As an initial matter, it does not appear CJC 1.1 and 1.2 are seriously in dispute. Appellant's Reply Br. at 16. Judge Pro Tem Ruzumna admits he misused a sitting judge's signature stamp and the official court seal when he created a false or misleading document in an attempt to gain discounted parking. This constitutes impropriety and a lack of integrity in violation of CJC 1.2 and so necessarily CJC 1.1. Importantly, the use of the term "fraudulent" in this case does not implicate criminal conduct. It is used in the ordinary meaning of the word and does not

10

require a criminal burden of proof. And whether the term "fraudulent" or "misleading" is used to describe the document at issue makes no difference to our conclusion. Further, whether Judge Pro Tem Ruzumna was entitled to the discount or the document was intended to be farcical neither minimizes nor excuses this conduct. On these facts alone, we find that Judge Pro Tem Ruzumna violated CJC 1.1 and 1.2.

The Commission found additional impropriety based on its conclusion that Judge Pro Tem Ruzumna repeatedly lied throughout disciplinary proceedings, including while under oath. Order at 23. The Commission perceives Judge Pro Tem Ruzumna's story about the additional stamps on the document as an initial lie that he fabricated to minimize or excuse his conduct, which "bound him to the same story as the situation progressed and he felt required to keep lying." Order at 28. We agree. The Commission's findings of fact and credibility determinations are supported by clear, cogent, and convincing evidence. Ms. De Los Santos testified unequivocally that there were no other stamps on the letter. Mr. Whitley testified that there was not sufficient space left on the paper to contain additional stamps. Further, Judge Pro Tem Ruzumna's testimony regarding whether the letter was returned to him and his explanation for changing the date on the signature stamp was confusing and conflicted with his earlier testimony. This constitutes substantial

evidence that Judge Pro Tem Ruzumna fabricated the story about additional stamps.

While lying or not testifying truthfully during the Commission's disciplinary proceedings is not itself a violation, it does compound our earlier finding of impropriety. Not only is Judge Pro Tem Ruzumna's initial misconduct in creating the document deceitful, demonstrating a lack of integrity and judgment, but his continued explanation demonstrates a further lack of integrity. Dishonesty in the disciplinary proceedings can also come into the *Deming* factor analysis when considering an appropriate sanction.

With regards to CJC 1.3, the Commission split as to whether a violation of this rule requires some type of knowledge. The Commission's concurrence/dissent reasoned that "the Rule is intended to focus on the misuse of judicial power and prestige typically to receive benefits *outside* of their judicial employment and to which the judge *knows* they are not entitled." Comm'n Concurrence, in part, Dissent, in part at 2.

We recently discussed the purpose of this rule in *Keenan* when we reversed the Commission's finding that Judge Keenan's approval of a bus ad to support a nonprofit community college violated CJC 1.3. *In re Disciplinary Proc. Against Keenan*, 199 Wn.2d 87, 101, 502 P.3d 1271 (2022). We explained that although "abuse" is not defined in the 2007 ABA *Model Code*, it is defined by *Black's Law*

12

*Dictionary* as "'[t]o depart from legal or reasonable use in dealing with (a person or thing); to misuse.'" *Keenan*, 199 Wn.2d at 101 (alteration in original) (quoting BLACK'S LAW DICTIONARY 13 (11th ed. 2019)).

We clarified that the terminology in this rule was changed from "lend" to "abuse" to avoid unnecessary confusion. *Keenan*, 199 Wn.2d at 101. For example, writing a letter of recommendation for a law clerk or extern might "lend" the prestige of the judge's office, but it does not "abuse" the power of office. On the other hand, using judicial letterhead to gain an advantage in conducting personal business or alluding to judicial status to gain favorable treatment violates the rule. CJC 1.3 cmt. 1.

We conclude that Judge Pro Tem Ruzumna's conduct violates CJC 1.3 because it represents a departure from reasonable use. While no express knowledge requirement exists in CJC 1.3, the word "abuse" suggests the judge must act in some unreasonable or wrongful manner. To be sure, Judge Pro Tem Ruzumna did not reasonably but mistakenly misuse stamps to which he was otherwise entitled to use. Rather, he violated the trust of a sitting judge by misappropriating her signature stamp and the official court seal while he had access to her office in attempt to receive a benefit.

The unauthorized misappropriation of official judicial insignia to achieve a personal benefit—however small—constitutes an ethical violation. Judge Pro Tem

Ruzumna created a document that purported to have been signed or authorized by Judge Robertson. In doing so, at least four steps were taken in its preparation. First, Judge Pro Tem Ruzumna created a dated document. Second, and most seriously, he accessed Judge Robertson's signature stamp and stamped the document. Third, he changed the date on the stamp to match the date of the document he created. Finally, he accessed and affixed a court clerk seal to the document. He then unsuccessfully presented the document to the parking attendant in attempt to receive a discount.

We do not need to decide whether Judge Pro Tem Ruzumna reasonably believed he was entitled to the discount to come to this conclusion. Even if he were so entitled, this means of receiving the discount abuses the prestige of judicial office because it is not a reasonable use of this judicial insignia. Judge Robertson's reaction and the executive committee's response reflect the severity of this misconduct. Judge Robertson described her reaction to learning about the letter as "confused," "shocked," and "incredulous." 1 Tr. at 84, 85. She confirmed that she is the only person authorized to use her signature stamp and that only clerks or administrative staff are allowed to use the court seal when accepting documents to indicate they have been filed. In her testimony, Judge Robertson described the gravity of misusing court stamps, stating, "Judges carry an exceeding amount of power, and their court orders must be followed. So it was very concerning to me

that someone could or did misuse that stamp given the weight that it could carry." 1 Tr. at 91.

Further, the intent to deceive exists—Judge Pro Tem Ruzumna presumably would have accepted the discount had it been given. We know this because he believed he was entitled to the discount and created the document with the intent of receiving it. Thus, his testimony that the document was intended as a joke lacks credibility because he created it for the very purpose of receiving the discount. Even if Judge Pro Tem Ruzumna were entitled to the discount, this conduct abuses the prestige of judicial office.

There were several other legitimate means by which Judge Pro Tem Ruzumna could have attempted to receive the discount that would not have abused his judicial status. For example, he could have contacted HR or the court administrator to provide him with formal confirmation that he was eligible for the discount. Judge Pro Tem Ruzumna's decision to abuse judicial insignia instead of use an alternative means to receive the discount violates CJC 1.3 and reflects a serious lack of the judgment and integrity that we expect from judges.

As Judge Robertson's testimony explained, judicial signature stamps and court seals carry significant legal weight. Misuse of these stamps, which are reserved for official court documents, threatens the integrity of the judiciary and risks eroding public confidence in the courts. Judge Pro Tem Ruzumna's argument

that he was entitled to the discount and he created the document as a lighthearted attempt to demonstrate that entitlement fails to acknowledge the severity of his offense and does not minimize or excuse his conduct.

    2. Appropriate Sanction

We conduct an independent evaluation of the *Deming* factors to determine the appropriate sanction. *In re Disciplinary Proc. Against Eiler*, 169 Wn.2d 340, 353, 236 P.3d 873 (2010) (plurality opinion). The nonexclusive list of *Deming* factors includes (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct, (b) the nature, extent and frequency of occurrence of the acts of misconduct, (c) whether the misconduct occurred in or out of the courtroom, (d) whether the misconduct occurred in the judge's official capacity or in private life, (e) whether the judge has acknowledged or recognized that the acts occurred, (f) whether the judge has evidenced an effort to change or modify their conduct, (g) the length of service on the bench, (h) whether there have been prior complaints about this judge, (i) the effect the misconduct has on the integrity of and respect for the judiciary, and (j) the extent to which the judge exploited their position to satisfy personal desires. 108 Wn.2d at 119-20.

The Commission has adapted the *Deming* factors into a more elaborate rule of procedure guiding its determination of appropriate discipline. Commission on Judicial Conduct Rules of Procedure (CJCRP) 6(c). The court will apply factors

from both standards. *See Eiler*, 169 Wn.2d at 353 (citing CJCRP 6(c)). The *Deming* factors and CJCRP 6(c) overlap significantly, with a few notable differences. In addition to the nonexclusive list of *Deming* factors, the Commission rule directs consideration of four additional factors: (1) whether the judge flagrantly and intentionally violated the oath of office, (2) the nature and extent to which the acts of misconduct have been injurious to other persons, (3) whether the judge cooperated with the commission investigation and proceeding, and (4) that the judge's compliance with an opinion by the ethics advisory committee shall be considered by the commission as evidence of good faith. CJCRP 6(c)(1)(E), (F), (2)(E), (F). While no single factor is dispositive or necessarily holds more weight than another, we have recently held removal is limited to flagrant and intentional violations of the oath of office or misuse of power. *In re Disciplinary Proc. Against Flood*, 5 Wn.3d 673, 684, 580 P.3d 432 (2025). This makes the factor addressing whether the judge's conduct was flagrant and intentional, which the Commission did not consider, particularly relevant in removal cases. The remaining factors should be considered as they are relevant to the case and under a totality of the circumstances type test.

Past removal cases have involved harassing, abusive, or deceitful behavior. *See Deming*, 108 Wn.2d at 120; *In re Disciplinary Proc. Against Ritchie*, 123 Wn.2d 725, 735, 870 P.2d 967 (1994); *Anderson*, 138 Wn.2d at 857. In *Ritchie* and

*Anderson*, dishonest or deceitful behavior warranted removal from judicial office. In *Ritchie*, 123 Wn.2d at 735, the judge repeatedly misrepresented the purpose of his travel in reimbursement requests, amounting to a pattern of misconduct involving dishonesty for personal gain, defrauding the public, and misrepresenting facts and circumstances. In *Anderson*, 138 Wn.2d at 857, the judge continued to participate in a for-profit corporation, deliberately failed to disclose payments made on his public disclosure filings, and attempted to misrepresent a car loan payment as a gift when it was in fact related to negotiations regarding the sale of the business. This court found that his conduct "clearly exhibit[ed] a pattern of dishonest behavior unbecoming of a judge." *Anderson*, 138 Wn.2d at 857.

Neither of the above removal cases involved dishonest conduct that occurred while the judge was engaged in official duties. Rather, it was general dishonesty, unfitting for a judge, which warranted removal. In this case, Judge Pro Tem Ruzumna not only engaged in dishonest conduct, like Ritchie and Anderson, but he also abused the power of his judicial status when he created a false document while engaged in judicial duties. This satisfies a flagrant and intentional misuse of judicial power.

*Whether the judge flagrantly and intentionally violated the oath of office*

As described above, Judge Pro Tem Ruzumna's conduct can be fairly considered flagrant and intentional because it involved misappropriating and

misusing official judicial insignia. Judge Pro Tem Ruzumna engaged in this intentional behavior to gain a personal financial benefit. This conduct demonstrates disregard for ethical responsibilities based on the weight these stamps carry. Judge Pro Tem Ruzumna's violation reflects a lack of respect for the integrity of the judiciary.

*Whether the misconduct is an isolated instance or evidence of a pattern of conduct*

While the act of creating the document took multiple steps, the misuse of judicial stamps occurred as an isolated instance. Judge Pro Tem Ruzumna did engage in a pattern of conduct by displaying multiple judicial items in an attempt to receive the parking discount. Without direct testimony from the parking attendant, we cannot presume to know the effect of Judge Pro Tem Ruzumna's conduct. But we can presume that a distinct power differential exists between a judge and a parking attendant. That power differential is inherent. Judges should not only be aware of that difference when interacting with the public but also should not abuse that authority. We accordingly find this factor aggravating under these facts.

*The nature, extent, and frequency of occurrence of the acts of misconduct*

As we have previously stated, unauthorized use of a sitting judge's signature stamp and the court seal to gain a personal benefit—however small—is a serious ethical violation. This constitutes a violation of Judge Robertson's trust and also a

lack of respect for the legal significance of judicial insignia and accordingly the judiciary. We find the nature of this misconduct aggravating.

*Whether the misconduct occurred in or out of the courtroom*

Typically, we have viewed this factor as aggravating when the conduct occurs while the judge is sitting on the bench.[4] Here, the conduct did not occur while Judge Pro Tem Ruzumna was presiding from the bench. This factor is of less significance under these circumstances.

*The nature and extent to which the acts of misconduct have been injurious to other persons*

This conduct directly impacted Judge Robertson and that of the district court by abusing the power of office while Judge Pro Tem Ruzumna was entrusted with judicial duties. As an elected judge, this misconduct threatens Judge Robertson's credibility and constitutes a serious betrayal of trust. It also resulted in the executive committee's unanimous action to remove Judge Pro Tem Ruzumna from the pro tem list.

Finally, Judge Pro Tem Ruzumna intended to deceive the parking attendant into giving him the discount based on this misappropriation of judicial stamps. We know there was intent to deceive because Judge Pro Tem Ruzumna presumably would have accepted the discount if the parking attendant had allowed it. While we

---

[4] *See, e.g., Eiler,* 169 Wn.2d at 354; *In re Disciplinary Proc. Against Hammermaster,* 139 Wn.2d 211, 246, 985 P.2d 924 (1999); *Deming,* 108 Wn.2d at 120.

cannot conclude exactly how the parking attendant felt in his interactions with Judge Pro Tem Ruzumna, we can presume that Judge Pro Tem Ruzumna's repeated references to his judicial status had some effect on the parking attendant. Although Judge Pro Tem Ruzumna claims the document was a joke, we know the parking attendant did not view it as such because he brought it to his manager to determine whether it was acceptable. This illustrates that Judge Pro Tem Ruzumna, at the very least, put the parking attendant in the uncomfortable position of having to either refuse a judge's repeated requests for the parking discount or fail to follow the instructions of his employer. We find this factor aggravating.

*Whether the misconduct occurred in the judge's official capacity or in private life*

While this misconduct did not occur while Judge Pro Tem Ruzumna was presiding from the bench, it did occur while he was acting as a pro tem judge. We have held that there must be an articulable nexus between a judge's misconduct and their judicial duties. *Turco*, 137 Wn.2d at 244. In *Turco*, the misconduct at issue occurred outside of the judge's official capacity because it involved domestic violence. But this bore an articulable nexus to the judge's duties due to inappropriate statements he had made while presiding over domestic violence cases, which we found adversely reflected on his fitness for hearing those cases.

The actual conduct here occurred inside the court, while Judge Pro Tem Ruzumna was acting in his official capacity as a pro tem and had access to Judge

Robertson's office. An articulable nexus exists to his judicial duties because judges are expected to act with integrity. Judge Pro Tem Ruzumna's lack of integrity in creating a misleading document demonstrates a failure to adhere to the ethical duties required of a judge. We find this factor aggravating.

*Whether the judge has acknowledged or recognized that the acts occurred*

Our cases have repeatedly held that failure to take accountability for misconduct is an aggravating factor.[5] Although Judge Pro Tem Ruzumna candidly admits creating this document, his minimization of the severity of this act by referring to it as farcical and lighthearted represents deflection, not genuine remorse. The failure to recognize the gravity of misappropriating official judicial insignia, joking or not, demonstrates that he has not recognized the magnitude of his misconduct. We find this factor aggravating.

*Whether the judge has evidenced an effort to change or modify the conduct*

Judge Pro Tem Ruzumna did suggest willingness to improve his adherence to ethical responsibilities and did complete a judicial ethics class; however, he does not explain how this ethics seminar relates to his misconduct. 1 Tr. at 269. Further,

---

[5] *See, e.g.*, *Hammermaster*, 139 Wn.2d at 246 (failure to acknowledge impropriety is aggravating even when judge admitted his actions); *Turco*, 137 Wn.2d at 250 (describing the judge's lack of contrition); *Anderson*, 138 Wn.2d at 856 (judge's argument demonstrated a failure to understand the magnitude of his misconduct and disregarded the importance of judicial integrity).

Judge Pro Tem Ruzumna's postdecision statement reflects a lack of genuine remorse.[6] Based on this conduct, we find this factor aggravating.

*Length of service on the bench*

Long tenure is generally considered an aggravating factor under our precedents. *Flood*, 5 Wn.3d at 686. The longer a judge has been in their position, the more they are expected to understand the significance of their conduct and its effect on the integrity of the judiciary.[7] Judge Pro Tem Ruzumna has been a pro tem judge for over 10 years. A judge with any level of experience should understand that misuse of another judge's signature stamp is improper. This is particularly true for a judge who has spent considerable time on the bench and understands the power that judicial office holds. We find this factor aggravating.

*Whether there have been prior complaints about this judge*

There is no evidence that Judge Pro Tem Ruzumna has engaged in prior misconduct or had prior complaints made against him. In fact, Judge Pro Tem Ruzumna presents compelling evidence of his positive reputation in the legal field.

---

[6] In this statement, Judge Pro Tem Ruzumna disparages disciplinary counsel and expresses frustration with the Commission's disciplinary procedure. He claims Ms. De Los Santos's testimony was motivated to "cover her own [a**]" and states, referring to disciplinary counsel, "[Y]ou should be ashamed of yourself, and I do believe that if you have anything like a conscience, your conduct in this case will haunt you for the rest of your life." Statement of David Ruzumna at 8.

[7] *Eiler*, 169 Wn.2d at 354 ("Judge Eiler's long years on the bench aggravate, rather than mitigate, her misconduct—she should know better.").

He served on the character and fitness board for the state bar association and volunteers at the Phinney Ridge legal clinic. 1 Tr. at 227-231. He was also well regarded in his judicial abilities among his former colleagues who testified. 1. Tr. at 94, 209. This factor is therefore mitigating.

*The effect the misconduct has on the integrity of and respect for the judiciary*

Misappropriating official court stamps for a relatively petty purpose greatly risks the integrity of the judiciary. These stamps are reserved for official court documents, which carry significant legal weight. The public respects judicial decisions because they are seen as legitimate. Judge Pro Tem Ruzumna's use of these stamps to receive a financial benefit—however small—risks placing the legitimacy of judicial institutions in question. This conduct is deeply concerning and represents a profound lack of respect for the integrity of the judiciary.

*The extent to which the judge exploited the judge's official capacity to satisfy personal desires*

Judge Pro Tem Ruzumna's attempts to use his judicial office to receive a parking discount cannot be excused. The violation here occurred because of the means by which Judge Pro Tem Ruzumna attempted to receive the discount. He used official judicial stamps in an unauthorized manner to receive a personal financial benefit. This factor is aggravating.

*Whether the judge cooperated with the commission investigation and proceeding*

A judge accused of committing judicial misconduct has every right to defend themselves against the allegations of the Commission. Judges are entitled to a fair proceeding. Failure to enter into a stipulation or strongly defending against the Commission's allegations are not appropriately considered failure to cooperate. We correctly rejected the Commission's recommendation of removal in *Flood* because those issues are not appropriately viewed as aggravating factors.

Nonetheless, a judge's conduct throughout disciplinary proceedings can be factored in when considering an appropriate sanction. In this case, it is Judge Pro Tem Ruzumna's ongoing dishonesty to the Commission in an attempt to minimize his conduct that results in our finding that this factor is aggravating.[8] Judge Pro Tem Ruzumna continuously denied the severity of his misconduct in his testimony regarding the presence of additional stamps. Not only does his initial misconduct reflect a lack of judgment and integrity incompatible with what we expect of a judge, his ongoing attempts to minimize that misconduct also reflect a lack of integrity. It is this behavior that we view as noncooperation with disciplinary proceedings.

---

[8] We are further troubled by the unwarranted criticism and disparagement of the Commission and counsel in Judge Pro Tem Ruzumna's postdecision statement.

Based on the above analysis of the *Deming* and CJCRP 6(c) factors, we agree with the Commission that the appropriate sanction in this case is removal. Judge Pro Tem Ruzumna will not be eligible for judicial office or to engage in pro tem work in the future unless his eligibility is reinstated. DRJ 11. Even considering the mitigating factors, the nature of Judge Pro Tem Ruzumna's decision to misappropriate official judicial insignia demonstrates that he has engaged in dishonesty unfitting for a judge.

## CONCLUSION

We adopt the Commission's recommendation censuring and removing Judge Pro Tem Ruzumna from office. Clear, cogent, and convincing evidence exists that Judge Pro Tem Ruzumna violated CJC 1.1, 1.2, and 1.3. Honesty and integrity are among the most critical traits expected of those entrusted with judicial office. Judge Pro Tem Ruzumna's violations warrant the sanction of removal.

Johnson, J.

WE CONCUR:

Stephens, C.J.

Whitener, J.

González, J.

Mungia, J.

Gordon McCloud, J.

O gmf {.'l0

Montoya-Lewis, J.

Madsen, J.P.T.